IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, the Commonwealth of Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, the Commonwealth of Virginia, Washington, Wisconsin, and the District of Columbia, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 2:14-cv-2077-PMD |
| Ex rel. DR. JOHN DOE, | ) ) | QUI TAM COMPLAINT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| PHILIPS ELECTRONICS NORTH AMERICA, PHILIPS HEALTHCARE, PHILIPS RESPIRONICS, AND MEDSAGE TECHNOLOGIES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# FILED IN CAMERA AND UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, the Commonwealth of Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, the Commonwealth of Virginia, Washington, Wisconsin, and the District of Columbia, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | Civil Action No.: |
| Ex rel. DR. JOHN DOE, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| PHILIPS ELECTRONICS NORTH AMERICA, PHILIPS HEALTHCARE, PHILIPS RESPIRONICS, AND MEDSAGE TECHNOLOGIES, | ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FILED IN CAMERA AND UNDER SEAL**
**QUI TAM COMPLAINT**

Qui tam plaintiff/relator Dr. John Doe ("Relator"), through his attorneys McNair Law Firm,

P.A., on behalf of the United States of America, the State of California, the State of Colorado, the

State of Connecticut, the State of Delaware, the State of Florida, the State of Georgia, the State of

Hawaii, the State of Illinois, the State of Indiana, the State of Iowa, the State of Louisiana, the

State of Maryland, the Commonwealth of Massachusetts, the State of Michigan, the State of

Minnesota, the State of Montana, the State of Nevada, the State of New Hampshire, the State of

New Jersey, the State of New Mexico, the State of New York, the State of North Carolina, the

State of Oklahoma, the State of Rhode Island, the State of Tennessee, the State of Texas, the Commonwealth of Virginia, the State of Washington, Wisconsin, and the District of Columbia, (collectively "the States and the District of Columbia"), for his Qui Tam Complaint against defendants Philips Electronics North America, Philips Healthcare, Philips Respironics, and Philips Medsage Technologies ("Medsage"), based upon his direct and personal knowledge, alleges as follows:

## I. INTRODUCTION

1.    This is an action to recover damages and civil penalties on behalf of the United States of America, the States, and the District of Columbia, arising from false and/or fraudulent records, statements and claims made, used and caused to be made, used or presented by Defendants,  and/or its agents, employees and co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729, et seq., as amended ("the FCA" or "the Act") and its state-law counterparts: the California False Claim Act, Cal. Gov. Code § 12650 et seq.; the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-303.5 et seq.; the Connecticut False Claims Act, Conn. Gen. Stat. Ann. § 17b-301 et seq.; the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. § 68.081, et seq.; the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. §23-3-120 et seq.; the Hawaii False Claims Act; HRS § 661-21 et seq.; the Iowa False Claims Act, I.C.A. § 685.3 et seq.; the Illinois False Claims Act, 740 Ill. Comp. Stat.§ 175/1-8; the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5- 1 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 et seq.; the Maryland False Health Claims Act; MD Code 2-601 et seq.; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq.; the Michigan Medicaid False Claim Act M.C.L. §400.601 et seq.; the Minnesota False Claims Act, Minn. Stat. Ann. § 15C.01 et seq.; the

Montana False Claims Act, Mont. Code Ann. § 17-8-401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:61-b et seq.; the New Jersey False Claims Act, N.J. Stat. Ann.§ 2A:32C-1 et seq.; The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 et seq.; the New York False Claims Act, N.Y. State Fin. Law§ 187 et seq.; the North Carolina False Claims Act, N.C.G.S.A. §1-605 et seq.; the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. 63 §5053. l et seq.; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq.; the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 et seq.; the Tennessee False Claims Act, T.C.A. § 71-5-182(a) et seq.; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq.; the Washington Medicaid Fraud False Claims Act, RCWA 74.66.005 et seq.; the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20. 931; and the District of Columbia False Claims Act, D.C. Code Ann.§ 2-381.01 et seq.

2.      Upon information and belief, Defendant has, since at least approximately January, 2011, conducted an unlawful kickback scheme to induce Home Medical Equipment ("HME") companies to utilize Philips continuous positive airway pressure ("CPAP") products, and variable/bilevel positive airway pressure ("VPAP") products, in violation of the federal Anti-Kickback Statutes, and analogous state laws and statutes.

3.      Defendants' scheme involves providing substantial, illegal financial inducements to HME companies, as described in more detail below:

A.      Paying for HME companies' costs of the services provided by Medsage's automated patient call center, but only for the services provided to customers of the HME companies that are using Philips CPAP/VPAP equipment and supplies;

B.    Providing HME companies that put their patients on Philips CPAP/VPAP equipment and supplies with free automated patient call center services through Medsage.

4.    As a direct result of Defendants' improper practices, federal and state health insurance programs including, but not limited to, Medicare, Medicaid, MediCal, TennCare, CHAMPUS/TRICARE, CHAMPVA and the Federal Employee Health Benefits Program ("FEHBP") have been caused to pay false or fraudulent claims for reimbursement of the Philips CPAP/VPAP equipment and supplies that resulted from Defendants' illegal kickbacks.

5.    The False Claims Act was originally enacted during the Civil War, and was substantially amended in 1986. Congress amended the Act to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.

6.    Congress intended that the amendments to the False Claims Act create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

7.    The Act provides that any person who knowingly submits, or causes the submission of a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government, plus attorneys' fees and costs. 31 U.S.C. §§ 3729. Liability attaches when a defendant knowingly seeks payment, or causes others to seek payment, from the Government that is unwarranted.

8.      The Act allows any person, known as a relator having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery.

9.      Based on these provisions, qui tam Plaintiff seeks through this action to recover on behalf of the United States and those States, all of which authorize similar qui tam actions, damages and civil penalties arising from the named Defendants' making or causing to be made false or fraudulent records, statements and/or claims in connection with its illegal kickbacks related to Philips CPAP/VPAP equipment and supplies.

10.     Although Defendants did not directly submit claims for CPAP/VPAP equipment and supplies to federal and state health insurance programs, it knew, and/or reasonably foresaw, that its illegal financial inducements would cause the submission of thousands of claims to these health programs for prescriptions that were not eligible for program reimbursement.

11.     Defendants are therefore liable under the federal False Claims Act, the federal Anti-Kickback Statute, and analogous state False Claims Acts for causing the submission of thousands of claims for Philips CPAP/VPAP equipment and supplies that were not eligible for reimbursement because those claims resulted from illegal kickbacks that were offered and/or supplied by Defendants to the HME companies.

## II.      PARTIES

**A.      <u>Relator Dr. John Doe</u>.**

12.     Plaintiff/Relator Dr. John Doe is a resident of South Carolina and a citizen of the United States.  Dr. John Doe is a pharmacist who through his employment with various companies involved in the HME industry has gained direct and personal knowledge of the illegal kickbacks and false claims alleged herein.  Relator brings this action on behalf of the United States of

COLUMBIA 1158319v1

America pursuant to the Qui Tam provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*

B.      **Defendant Philips Electronics North America.**

13.      Upon information and belief, Defendant Philips Electronics North America is a corporation organized under the laws of Delaware, with its principal place of business located at 3000 Minuteman Road, Andover, Massachusetts 01810. Upon information and belief, Defendant Philips Electronics North America is the parent company of Philips Healthcare.  Upon information and belief, Defendant Philips Electronics North America regularly transacts business in this federal district.

C.      **Defendant Philips Healthcare.**

14.      Upon information and belief, Defendant Philips Healthcare is a corporation organized under the laws of Delaware, with its principal place of business located at 3000 Minuteman Road, Andover, Massachusetts 01810.  Upon information and belief, Philips Healthcare is a wholly owned subsidiary of Philips Electronics North America.  Upon information and belief, Defendant Philips Healthcare regularly transacts business in this federal district.

D.      **Defendant Philips Medsage Technologies.**

15.      Upon information and belief, Defendant Medsage is a corporation organized under the laws of Pennsylvania, with a principal place of business at 2030 Ardmore Blvd., Pittsburgh, Pennsylvania, 15221.  Upon information and belief, Medsage is a wholly owned subsidiary of Philips Healthcare.  Upon information and belief, Defendant Philips Medsage Technologies regularly transacts business in this federal district.

16.      Upon information and belief, Medsage is a provider of patient-management software designed to help HME providers improve compliance and outcomes, and streamline the re-supply process for patients with OSA, diabetes and other diseases. The company's software

6

automates patient contact, checks on patient compliance (allowing providers to intervene if necessary) and generates new supply orders.

**E.      Defendant Philips Respironics.**

17.     Upon information and belief, Defendant Philips Respironics is a corporation organized under the laws of Pennsylvania, with a principal place of business at 1010 Murry Ridge Lane, Murrysville, Pennsylvania 15668.  Upon information and belief, Philips Respironics is a wholly owned subsidiary of Philips Healthcare.  Upon information and belief, Defendant Philips Respironics regularly transacts business in this federal district.

18.     Upon information and belief, Defendant Philips Respironics is organized into three primary groups: the Sleep and Home Respiratory Group, the Hospital Group, and the International Group.  The Sleep and Home Respiratory Group provides solutions for patients who suffer from chronic respiratory diseases, with a broad range of oxygen, ventilation and monitoring products. The Sleep Disordered Breathing group provides products used in the treatment of Obstructive Sleep Apnea (OSA).  The Sleep Well Ventures group provides products for undiagnosed and untreated sleep and sleep-related movement disorders such as insomnia, circadian rhythm disorders, or restless legs syndrome.

19.     Upon information and belief, Defendant Philips Respironics develops, manufactures and markets a broad range of prescription CPAP/VPAP equipment and supplies, including but not limited to, the following prescription products:

A.      Continuous Positive Airway Pressure (CPAP) devices that deliver a steady flow of air throughout the night as a treatment for sleep apnea.

B.      Bi-level therapy devices that deliver two levels of pressure during the night;

C.      Auto therapy devices;

D.      Humidifiers;

7

E.      Tubing used to carry the air from the therapy device to the mask;

F.      Therapy device filters;

G.      Masks used to deliver the air from the therapy device;

H.      Chinstraps/headgear.

20.    Philips Respironics sells these products to HME companies who provide CPAP/VPAP equipment and supplies to patients pursuant to a prescription.

### III. JURISDICTION AND VENUE

21.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 28 U.S.C. § 1345, 42 U.S.C. §1320-7b(b), and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3720. In accordance with 31 U.S.C. § 3730(e)(4)(A), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. None of the allegations set forth in this Complaint are based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative or General Accounting Office report, hearing, audit or investigation, or from the news media. Relator has direct and independent knowledge of the information on which the allegations set forth in this Complaint are based. In accordance with 31 U.S.C. § 3730(e)(4)(B), Relator is an original source with direct and independent knowledge of the allegations contained herein.

22.    The Court has subject matter jurisdiction over Defendant's violations of the California False Claim Act, Cal. Gov. Code § 12650 et seq.; the Colorado Medicaid False Claims Act, C.R.S.A. § 25.5-4-303.5 et seq.; the Connecticut False Claims Act, Conn. Gen. Stat. Ann. § 17b-301 et seq.; the Delaware False Claims and Reporting Act, 6 Del. C. § 1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. § 68.081, et seq.; the Georgia Taxpayer Protection False Claims Act, Ga. Code Ann. §23-3-120 et seq.; the Hawaii False Claims Act; HRS § 661-21 et seq.; the

Iowa False Claims Act, I.C.A. § 685.3 et seq.; the Illinois False Claims Act, 740 Ill. Comp. Stat.§ 175/1-8; the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5- 1 et seq.; the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 et seq.; the Maryland False Health Claims Act; MD Code 2-601 et seq.; the Massachusetts False Claims Act, Mass. Gen. Laws ch. 12, § 5A et seq.; the Michigan Medicaid False Claim Act M.C.L. §400.601 et seq.; the Minnesota False Claims Act, Minn. Stat. Ann. § 15C.01 et seq.; the Montana False Claims Act, Mont. Code Ann. § 17-8-401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:61-b et seq.; the New Jersey False Claims Act, N.J. Stat. Ann.§ 2A:32C-1 et seq.; The New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 et seq.; the New York False Claims Act, N.Y. State Fin. Law§ 187 et seq.; the North Carolina False Claims Act, N.C.G.S.A.  §1-605 et seq.; the Oklahoma Medicaid False Claims Act, Okla. Stat. Ann. 63 §5053. l et seq.; the Rhode Island State False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq.; the Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.001 et seq.; the Tennessee False Claims Act, T.C.A. § 71-5-182(a)  et seq.; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq.; the Washington Medicaid Fraud False Claims Act, RCWA 74.66.005 et seq.; the Wisconsin False Claims for Medical Assistance Law, Wis. Stat. § 20. 931; and the District of Columbia False Claims Act, D.C. Code Ann.§ 2-381.01 et seq., pursuant to 31 U.S.C. § 3732(b) because Defendant's violations of the State False Claims Acts and the federal FCA arise out of a common nucleus of operative fact. See also 3 l U.S.C. § 3732(b) (granting district court's jurisdiction over any action brought under the laws of any state for the recovery of funds paid by a state if the action arises from the same transaction or occurrence as an action brought under the federal FCA).

23.    This Court has personal jurisdiction and venue over the Defendants pursuant to 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a) because the Defendants transact business in and throughout the District of South Carolina.

24.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b), because the Defendants can be found in and transact business in the District of South Carolina. At all times relevant to this Qui Tam Complaint, the Defendants regularly conducted substantial business within the District of South Carolina, maintained employees and offices in South Carolina and made significant sales within South Carolina.  In addition, statutory violations as alleged herein, occurred in this district.

## IV.    BACKGROUND ON FEDERAL & STATE-FUNDED HEALTH INSURANCE PROGRAMS

### A.    **Medicare Program**

25.    In 1965, Congress enacted Title XVIII of the Social Security Act, which established the Medicare Program to provide health insurance for the elderly and disabled. Medicare is a health insurance program for: people age 65 or older; people under age 65 with certain disabilities; and people of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

26.    Medicare now has three parts: Part A; Part B, and Part D Programs.

27.    Medicare Part A (Hospital Insurance) helps cover inpatient care in hospitals, including critical access hospitals, and skilled nursing facilities (not custodial or long-term care). Medicare Part A also helps cover hospice care and some home health care.

28.    Medicare Part B (Medical Insurance) helps cover doctors' services and outpatient care, as well as other medical services not covered by Part A including HME equipment and

supplies. Part B also helps pay for covered health services and supplies when they are medically necessary.

29.    Medicare Part D (Prescription Drug Plan) provides beneficiaries with assistance in paying for out-patient prescription drugs

30.    Payments from the Medicare Program come from a trust fund - known as the Medicare Trust Fund - which is funded through payroll deductions taken from the work force, in addition to government contributions. Over the last forty years, the Medicare Program has enabled the elderly and disabled to obtain necessary medical services from medical providers throughout the United States.

31.    The Medicare Program is administered through the United States Department of Health and Human Services ("HHS") and, specifically, the Centers for Medicare and Medicaid Services ("CMS"), an agency of HHS.

32.    Much of the daily administration and operation of the Medicare Program is managed through private insurers under contract with the federal government.

33.    Under Medicare Part A, contractors serve as "fiscal intermediaries," administering Medicare in accordance with rules developed by the Health Care Financing Administration ("HCF A").

34.    Under Medicare Part B, the federal government contracts with insurance companies and other organizations known as "carriers" to handle payment for physicians' services in specific geographic areas. These private insurance companies, or "Medicare Carriers", are charged with and responsible for accepting Medicare claims, determining coverage, and making payments from the Medicare Trust Fund.

COLUMBIA 1158319v1

35.    Under Medicare Part D, Medicare beneficiaries must affirmatively enroll in one of many hundreds of Part D plans ("Part D Sponsors") offered by private companies that contract with the federal government. Part D Sponsors are charged with and responsible for accepting Medicare Part D claims, determining coverage, and making payments from the Medicare Trust Fund.

36.    The principal function of both intermediaries and carriers is to make payments for Medicare services, and to audit claims for those services, to assure that federal funds are spent properly.

37.    To participate in Medicare, providers must assure that their services are provided economically and only when, and to the extent they are medically necessary. Medicare wlll only reimburse costs for medical services that are needed for that prevention, diagnosis, or treatment of a specific illness or injury.

### B.    Medicaid Program

38.    Medicaid was created in 1965, at the same time as Medicare, when Title XIX was added to the Social Security Act. The Medicaid program aids the states in furnishing medical assistance to eligible needy persons, including indigent and disabled people. Medicaid is the largest source of funding for medical and health-related services for America's poorest people.

39.    Medicaid is a cooperative federal-state public assistance program which is administered by the states.

40.    Funding for Medicaid is shared between the federal government and those state governments that choose to participate in the program. Federal support for Medicaid is significant. For example, the federal government provides 70% of the funding for South Carolina Medicaid, the remaining 30% of funds is received from the state.

COLUMBIA 1158319v1

41.     Title XIX of the Social Security Act allows considerable flexibility within the states' Medicaid plans and therefore, specific Medicaid coverage and eligibility guidelines vary from state to state.

42.     However, in order to receive federal matching funds, a state Medicaid program must meet certain minimum coverage and eligibility standards. A state must provide Medicaid coverage to needy individuals and families in five broad groups: pregnant women; children and teenagers; seniors; people with disabilities; and people who are blind. In addition, the state Medicaid program must provide medical assistance for certain basic services, including inpatient and outpatient hospital services.

### C.    Other Federal Health Care Programs

43.     In addition to Medicaid and Medicare, the federal government reimburses a portion of the cost of prescription medication, equipment, and supplies under several other federal health care: programs, including but not limited to CHAMPUS/TRICARE, CHAMPVA and the: Federal Employees Health Benefit Program.

44.     CHAMPUS/TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces. CHAMPVA, administered by the United States Department of Veteran Affairs, is a health care program for the families of veterans with a 100 percent service connected disability. The Federal Employee Health Benefit Program, administered by the United States Office of Personnel Management, provides health insurance for hundreds of thousands of federal employees, retirees, and survivors.

COLUMBIA 1158319v1

## V.  APPLICABLE LAW

### A.      Federal Anti-Kickback Statute

45.      Enacted in 1972, the main purpose of the federal Anti-Kickback Statute, 42 U.S.C. §1320a-7b, is to protect patients and federal health care programs from fraud and abuse by curtailing the corrupting influence of money on health care decisions.

46.      When a company pays kickbacks to a medical equipment provider, such as an HME, in order to induce the provider to use the company's products, it fundamentally compromises the integrity of the provider/patient relationship.  Government-funded healthcare programs, such as Medicare and Medicaid, rely upon health care providers to decide what treatment and/or medical equipment is appropriate and medically necessary for patients, and, therefore, payable by that healthcare program.  As a condition of its reimbursement, government healthcare programs require that individuals and companies must render their services without the conflict of receipt of a kickback.

47.      Many states, including those States identified as Plaintiffs herein, have enacted similar prohibitions against illegal inducements to health care decision-makers.

48.      The federal Anti-Kickback Statute and analogous state laws make it a crime to knowingly and willfully offer, pay, solicit or receive any remuneration to induce a person:

(1) to refer an individual to a person for the furnishing of any item or service covered under a federal health care program; or

(2) to purchase, lease, order, arrange for or recommend any good, facility, service, or item covered under a Federal health care program.

42 U.S.C. §1320a-7b(b)(l) and (2).

49.      The term "any remuneration" encompasses any kickback, bribe, or rebate, direct or indirect, overt or covert, in cash or in kind. 42 U .S.C. § 1320a-7b(b)(1 ).

COLUMBIA 1158319v1

50.     Violations of the federal Anti-Kickback Statute must be knowing and willful. 42 U.S.C. §1320a-7b(b)(l).

51.     The federal Anti-Kickback Statute has been interpreted by the United States Court of Appeals for the Third Circuit, as well as other federal courts, to cover any arrangement where one purpose of the remuneration was to obtain money for the referral of services or to induce further referrals. See United States v. Greber, 760 F.2d 68 (3d Cir.), cert denied, 474 U.S. 988 (1985).

52.     Proof of an explicit quid pro quo is not required to show a violation of the Anti-Kickback Statute.

53.     In addition to the various laws and regulations all pharmaceutical and medical device companies are required to follow, the Government also offers industry guidance in an effort to police the marketing activities of the pharmaceutical industry.

54.     For instance, the Office of the Inspector General of the Department of Health and Human Services ("HHS-OIG"), in May 2003, issued its Compliance Program Guidance for Pharmaceutical Manufacturers, a document meant to provide an overview of the fundamental elements of a pharmaceutical manufacturer compliance plan, and identifies and discusses specific risk areas. (Exhibit 1).

55.     HHS-OIG has stated that " antikickback statute ultimately turns on a party's intent, it is possible to identify arrangements or practices that may present a significant potential for abuse. Initially, a manufacturer should identify any remunerative relationship between itself (or its representatives) and persons or entities in a position to generate federal health care business for the manufacturer directly or indirectly.  Persons or entities in a position to generate federal health care business include, for example, purchasers, benefit managers, formulary committee members,

group purchasing organizations (GPOs), physicians and certain allied health care professionals, and pharmacists. The next step is to determine whether any one purpose of the remuneration may be to induce or reward the referral or recommendation of business payable in whole or in part by a Federal health care program." HHS-OIG Guidance to Pharmaceutical Manufacturers, issued May 2003, p. 23734 (Exhibit 1).

56.     The HHS-OIG raised an issue directly on point with the illegal activity of the Defendants herein: "Product Support Services. Pharmaceutical manufacturers sometimes offer purchasers certain support services in connection with the sale of their products. These services may include billing assistance tailored to the purchased products, reimbursement consultation, and other programs specifically tied to support of the purchased product. Standing alone, services that have no substantial independent value to the purchaser may not implicate the anti-kickback statute. However, if a manufacturer provides a service having no independent value (such as limited reimbursement support services in connection with its own products) in tandem with another service or program that confers a benefit on a referring provider (such as a reimbursement guarantee that eliminates normal financial risks), the arrangement would raise kickback concerns." HHS-OIG Guidance to Pharmaceutical Manufacturers, issued May 2003, p. 23735 (Exhibit 1).

57.     A violation of the federal Anti-Kickback Statute constitutes a felony punishable by a maximum fine of $25,000, imprisonment up to five years, or both. A party convicted under the federal Anti-Kickback Statute may be excluded (i.e., not allowed to bill for any services rendered) from Federal health care programs. 42 U.S.C. § 1320a-7(a).

58.     In addition to criminal penalties, a violation of the Anti-Kickback Statute can also subject the perpetrator to exclusion from participation in federal health care programs (42 U.S.C. § 1320a-7(b)(7)), civil monetary penalties of $50,000 per violation (42 U.S.C. § 1320a-7a(a)(7)),

and three times the amount of remuneration paid, regardless of whether any part of the remuneration is for a legitimate purpose. 42 U.S.C. § 1320a-7a(a).

59.    HHS has published safe harbor regulations that define practices that are not subject to prosecution or sanctions under the federal Anti-Kickback Statute because such practices would unlikely result in fraud or abuse. See 42 C.F.R. § 1001.952. However, only those arrangements that precisely meet all of the conditions set forth in the safe harbor are afforded safe harbor protection. None of the practices at issue here meet these safe harbor regulations.

60.    Compliance with the Anti-Kickback Statute is a condition of payment under the Medicare and Medicaid programs, and that condition applies regardless of which entity is submitting the claim to the government.

61.    Claims that arise from a kickback scheme violate the False Claims Act for two separate and distinct reasons: (1) claims seeking payment for services or prescriptions tainted by kickbacks are "factually false" because compliance with the Anti-Kickback Statute is a condition of payment; and (2) health care providers must certify in their provider enrollment agreement that they will comply with the Anti-Kickback Statute as a condition of payment.

62.    Claims that result from a kickback scheme are per se false because the Anti-Kickback Statute prohibits the government from paying for services or pharmaceuticals tainted by kickbacks. No further express or implied false statement is required to render such infected claims false, and none can render the claim legitimate.

63.    The False Claims Act imposes liability where a defendant knowingly causes such tainted claims to be presented to the Medicare, Medicaid, or other government funded healthcare programs.

64.     Second, as a prerequisite to participating in federally-funded health care programs, providers must certify (expressly or, through their participation in a federally-funded health care program, impliedly) their compliance with the federal Anti-Kickback Statute.

65.     HME companies, Physicians, hospitals, and pharmacies enter into Provider Agreements with CMS in order to establish their eligibility to seek reimbursement from the Medicare Program.   As part of that agreement, without which HME companies, physicians, hospitals and pharmacies may not seek reimbursement from Federal Health Care Programs, the provider must sign the following certification:

> I agree to abide by the Medicare laws, regulations and program, instructions that apply to [me]. The Medicare laws, regulations, and program instructions are available through the [Medicare] contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal Anti-Kickback statute and the Stark law), and on the [provider's] compliance with all applicable conditions of participation in Medicare.

Form CMS-855-S (for Durable Medical Equipment, Prosthetics, Orthotics and Supplies (DMEPOS) Suppliers) (Exhibit 2).

66.     Moreover, as a prerequisite to participating in the various state Medicaid programs, providers must certify (expressly or, through their participation in the state-funded health care program, impliedly) their understanding of and compliance with both the federal Anti-Kickback Statute and applicable state anti-kickback laws.

67.     Even in the absence of an express certification of Compliance, a party that submits a claim for payment impliedly certifies compliance with all conditions of payment, i.e., that it is properly payable.

68.    Consequently, if a party pays a kickback to induce the provision of a particular CPAP machine and supplies, it renders false the submitter's implied or express certification of compliance that the resulting claim complies with the requirements of the Anti-kickback Statute.

69.    On March 23, 2010, as part of the Affordable Healthcare for America Act, the Anti-Kickback Statute was amended to clarify that all claims resulting from a violation of the Anti-Kickback Statute are a violation of the federal False Claims Act. 42 U.S.C. § 1320a-7(b)(g). The amendment to the Anti-Kickback Statute codified the long standing law within the Federal Circuit Courts of Appeals that a violation of the Anti-Kickback Statute renders a claim false under the federal False Claims Act.  See e.g., United States ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235 (3d Cir. 2004).

## VI.  FRAUD ALLEGATIONS:

**A.    Philips Provides Improper Financial Remunerations To HME Companies To Induce Them To Recommend And Provide Philips' CPAP Equipment And Supplies To Their Patients, In Violation Of The Anti-Kickback Statute.**

### 1.    Overview of Philips's Improper Financial Inducements.

70.    Obstructive sleep apnea ("OSA") is a condition in which a person's upper airway becomes narrow as the muscles relax naturally during sleep.  This reduces oxygen in the blood and results in sleep apena and/or hypopneas.  Approximately 15 million people in the United States are actively being treated for this condition.

71.    The medical treatment for OSA is positive airway pressure ("PAP").  PAP treats OSA by delivering a stream of compressed air via a hose to a nasal pillow, nose mask, full-face mask, or hybrid, splinting the airway (keeping it open under air pressure) to deliver unobstructed breathing by reducing and/or preventing apneas and hypopneas.

72.    There are two forms of equipment for the provision of PAP, CPAP (continuous positive airway pressure), and VPAP (variable positive airway pressure).

73.     Philips' revenue from its CPAP/VPAP equipment product lines depends upon the decision by Respiratory Therapists and similar practitioners working at HME companies to recommend and provide Philips products to their patients, rather than products sold by one of Philips' competitors.

74.     When a physician diagnoses a patient and prescribes the use of a CPAP or VPAP machine, that physician's prescription does not usually specify what particular manufacturers' CPAP/VPAP equipment, and supplies are to be provided.

75.     A patient who receives such a prescription goes to an HME company to obtain his/her CPAP/VPAP equipment and supplies.

76.     A Respiratory Therapist or other similar medical practitioner is required to use his/her medical knowledge and judgment to determine the best CPAP/VPAP equipment and supplies for that particular patient, and makes a recommendation accordingly.

77.     The decision to recommend and provide a particular manufacturers' CPAP/VPAP equipment and supplies should may not be based on any kickback or remuneration offered by a manufacturer to induce such a selection.

78.     Once a patient has received his/her initial CPAP/VPAP equipment and supplies, that patient is eligible under Medicare and other federal programs to receive replenishment supplies per Medicare guidelines (approximately every three months).   These replenishment supplies include a new mask, tubing, chinstraps/headgear, and filters.   Medicare reimburses approximately $472.00 for these quarterly supplies, with annual reimbursement of approximately $1,890.   (Exhibits 3 & 4).

79.    An HME company has a significant financial interest in maintaining its relationship with its patients, because most patients remains on CPAP/VPAP therapy for the duration of his/her life.

80.    HME suppliers have a significant financial interest in ensuring that its patients continue to purchase their replenishment supplies per Medicare guidelines from the HME company.

81.    An HME company that is successful in maintaining contact with CPAP/VPAP to provide the replenishment supplies, will be reimbursed by Medicare approximately $1,890.00 per year for such supplies.

82.    To achieve this goal, HME companies utilize third party companies that operate patient call centers (generally involving automated calls), to make periodic calls to patients to remind patients to replenish their CPAP/VPAP supplies from the HME company.    HME companies pay a per patient, per month, fee to these third party call centers for this service.

83.    Defendant Medsage is such a third party call center.

84.    Upon information and belief, in January 2011, Philips acquired Medsage.

85.    Upon information and belief, contemporaneously with this purchase, Philips Respironics' "Fit for Life" program was revised to offer the monthly patient call/Medsage services free to HME companies whose patients were using Philips CPAP/VPAP equipment and supplies. (the "The Program").

86.    Philips' website describes the program as follows:

Philips Respironics introduces a comprehensive sleep apnea mask solution that helps keep you in touch with your patients through the lifetime of their therapy.

By offering a patient interface solution with a mask and resupply service included in the purchase price, Philips Respironics demonstrates a commitment to the long-term success of your

21

> patients' therapy and your business. When you choose our masks,
> your patients will receive access to either our medSage or
> EncoreResupply service. The Fit for Life solution benefits both your
> patients and you by increasing patient compliance and satisfaction
> and helping you develop a standard, quality-driven approach to
> meeting the payer and industry requirements that are making in-
> house resupply programs more and more challenging

(Exhibit 5; Philips Respironics website extract).

87.    Philips' website goes on to describe the benefits of this program:

> Securing patients for life translates to an opportunity for exceptional
> long-term engagement and results for your patients. Fit for Life goes
> beyond traditional mask distribution, providing a comprehensive
> solution that can help both you and your patients become "fit for
> life."

Id.

88.    Philips and Medsage representatives make sales calls on HME companies to sell

The Program.

89.    The Program provides free call center services to HME companies that enroll in

The Program, for every patient using a Philips mask.

90.    The free services include:

This fee includes:
- ☑ Licensing and operations of the medSage application network platform, including all medSage hardware, software, and telephony infrastructure required to support the application.
- ☑ Maintenance and support for the software as well as maintenance, telephone charges, hosting, etc., of the medSage proprietary HCVoice technology.
- ☑ All associated telephone fees, 24/7 monitoring, and Customer Support.
- ☑ Two-way connectivity - so the patient can call the system and take the survey any time of the day or night.
- ☑ **Additional Services and Customer Requirements**: Attachment A summarizes "Included Services" as well as "Supplemental Services" which are billed on a time and materials basis.

(Exhibit 6).

91.    For every patient that is not utilizing a Philips' mask, the HME company must pay a monthly fee of $0.99 per patient per month for these same services.

92.    The Program agreement with the HME company specifically provides:

**Monthly Service Fees:** (Quarterly call Frequency)

| Patients on medSage System | Associated Fees |
|---|---|
| No Monthly Service Fees will be incurred for any CPAP patient, **identified by medSage from the provider's <u>billing system</u>, who has purchased a Philips Respironics mask that includes the "Fit for Life" service.** | Prepaid |
| The Monthly Service Fee rate for any CPAP patient who is *not* **identified by medSage as on a Philips Respironics mask** that includes the "Fit for Life" service will be a flat monthly fee. | $0.99 per patient per month |

(Exhibit 6; Medsage contract with HME company).

93.    The Program is a valuable financial inducement being paid by Philips to the HME companies to supply patients with Philips masks. The HME company receives free sophisticated call center's services for patients supplied with a Philips mask, but has to pay $0.99 per patient per month for each patient supplied with a competitors mask. This inducement illegally influences the medical decision making of the HME company providers.

94.    Philips and Medsage state that the fee is "prepaid" and included in the cost of the Philips mask.

95.    This prepayment is fictitious. The HME pays nothing for these added Medsage services, as long as they are putting their patients on Philips CPAP/VPAP products.

96.    An HME company pays no more for a Philips mask it purchases on the "Fit for Life" program than it does without participating in the Medsage Program.

97.    An HME company that puts its patients on a Philips mask gets the free Medsage services that they would usually have to pay $0.99 per patient per month.  This amounts to an annual savings to the HME company of $11.88 per patient.  For an HME company that has 10,000 patients utilizing Philips masks, that amounts to an annual illegal kickback worth $118,800.00.  The value of this illegal kickback virtually assures that an HME company will move its patients from other manufacturers' masks to the Philips product, and put all new CPAP/VPAP patients on a Philips mask to obtain the full benefit of the Medsage Program.  An HME company that is successful in getting all of its patients on a Philips mask gets a very sophisticated patient call service for free.

98.    One purpose of Philips' illegal financial inducements is to induce HME companies to arrange for and provide their patients with Philips' CPAP/VPAP equipment and supplies.

99.    Philips' offer and provision of these financial inducements to HME companies in an effort to induce them to provide their patients with Philips CPAP/VPAP equipment and supplies is a violation of the federal Anti-Kickback Statute, as well as similar State Anti-Kickback Statutes.

2.    **The meetings between the Medsage representatives and the Relator, Dr. John Doe.**

100.    John Doe worked for a company that operates an HME division ("Previous Employer") in South Carolina, and he has intimate knowledge of the Home Medical Equipment division.

101.    In 2012, John Doe attended a conference where John Doe spoke with several Medsage representatives.

102.    The Medsage representatives explained The Program to John Doe, including that for patients that HME companies place on a Philips mask, the fee to the HME company for Medsage's services would be waived. However, for patients that a HME company places on another manufacturer's mask (a Philips competitor), the fee for Medsage's services (at that time) would be $1.25 per patient per month to the HME company.

103.    Following that conference, John Doe received several calls from the Medsage representatives about Previous Employer joining the Medsage Program.

104.    Additionally, the Philips Respironics sales representative for Previous Employer, raised the discussion of Previous Employer joining the Medsage Program during his regular sales visits and explained how The Program would save Previous Employer money when Philips products were selected.

105.    In 2012, the Philips Respironics sales representative for Previous Employer made another trip to Previous Employer to discuss Previous Employer's use of the Medsage Program with John Doe.  However, Previous Employer reached a decision to use a competing automated patient call service.  Previous Employer entered into an agreement with this competing automated patient call service at a per patient per month fee for all patients, regardless of the manufacturer of the CPAP/VPAP equipment and supplies.

106.    John Doe chose for Previous Employer not to go with the Philips/Medsage Program because of his concerns that the Medsage Program was making illegal kick-backs to HME companies to induce them to put their patients on Philips equipment and supplies.

107.    John Doe continues to maintain an ongoing relationship with Previous Employer.

108.     John Doe has observed several large HME companies move their automated call center business from competitors to Medsage in order to use this free service for patients they place on Phillips products (as a result of Defendants' illegal scheme).

109.     John Doe spoke with the owner of a large HME in 2014.  The owner explained to John Doe that due to the Medsage arrangement, his company decided to utilize more Philips products so it can take advantage of the Medsage Program for current and future patients.  He stated he would like to use Medsafe competitors, but because the margins have become so tight he has to utilize the Medsage option to save money for his company.  He inferred that due to this arrangement, he was going to continue to move his patients that were on CPAP/VPAP masks from other manufacturers over to Philips CPAP/VPAP masks, and to set up new patients on Philips CPAP/VPAP equipment and supplies.

110.     It is clear that the Phillips/Medsage scheme to provide a free call center as an inducement to for HME companies to place patients on Phillips' products is working. This is exactly the illegal kickback and resulting inducement that the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b and similar state anti-kickback laws were created to prevent.

111.     John Doe is aware of other HME companies moving their automated call center business to Medsage as a result of Defendants' illegal scheme. The Philips/Medsage kickback scheme has induced these HME companies to place patients on Philips products. Philips/Medsage has caused the above referenced HME companies to submit false claims for each of the sales induced by the kickback scheme.

112.     In 2014, a Medsage representative made a sale call on Previous Employer to promote the Philips Medsage Program.   Previous Employer was provided with a copy of the proposed contract between the two parties, which fully illustrates the illegal inducement the

Defendants are providing to HME companies to put their patients on Philips CPAP/VPAP equipment and supplies. (Exhibit 6). Following that sales call, Previous Employer consulted John Doe regarding the proposal, who once again expressed his concerns with the illegality of the scheme.

### 3.    The Free Patient Call Center Services Defendants Provide to HME Companies Through The Fit For Life Program Constitutes an Illegal Kickback

113.    A standard expense for HME companies is the proper payment to call centers to call their patients and remind them when it is time to obtain new supplies. The normal expense for this call center service is approximately $1.00 per patient, per month.

114.    Upon information and belief, Defendants have been providing valuable patient call center services to HME companies across the country, since January 2011, as part of Philips' Fit For Life program.

115.    Defendants provide these valuable patient call center services to HME companies free of charge, for any patient that the HME company has on a Philips CPAP/VPAP mask.

116.    The Philips Defendants' revenue from their CPAP/VPAP business depends heavily upon HME companies putting their patients on Philips CPAP/VPAP masks and supplies. The medical providers at the HME companies have a large influence over which manufacturers' CPAP/VPAP equipment and supplies a patient will use.

117.    Philips knowingly and willfully offers and provides these valuable patient call center services to HME companies free of charge to induce them to put their patients on Philips CPAP/VPAP equipment and supplies.

118.    HME companies who received Defendants' illegal inducements directed patients in federally-funded health care programs to Philips' products, in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and similar state anti-kickback laws.

### 4.    Philips' Inducements Violate the Federal and State Anti-Kickback Statutes

119.    The Defendants have, as described above, knowingly engaged in an ongoing program to provide financial remuneration to HME companies in order to induce them to put their CPAP/VPAP patients on Philips CPAP/VPAP equipment and supplies, in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and similar state anti-kickback laws.

Philips's illegal financial inducements to HME companies, as described in more detail above, include:

A.    Paying for HME companies' costs of the services provided by Medsage's automated patient call center, but only for the services provided to customers of the HME companies that are using Philips CPAP/VPAP products;

B.    Providing HME companies that put their patients on Philips CPAP/VPAP products with free automated patient call center services through Medsage.

This fee includes:
- ☑ Licensing and operations of the medSage application network platform, including all medSage hardware, software, and telephony infrastructure required to support the application.
- ☑ Maintenance and support for the software as well as maintenance, telephone charges, hosting, etc., of the medSage proprietary HCVoice technology.
- ☑ All associated telephone fees, 24/7 monitoring, and Customer Support.
- ☑ Two-way connectivity - so the patient can call the system and take the survey any time of the day or night.
- ☑ **Additional Services and Customer Requirements**: Attachment A summarizes "Included Services" as well as "Supplemental Services" which are billed on a time and materials basis.

(Exhibit 6).

120.    The Defendants have provided, and continue to provide, these illegal, valuable financial remunerations to HME companies across the United States, to induce those physicians

to put their patients on Philips CPAP/VPAP equipment and supplies, including patients insured by Medicare, Medicaid, and other federal and state health care programs.

121.    HME companies who received Defendants' illegal inducements directed patients in federally-funded health care programs to Philips' products in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and similar state anti-kickback laws.

### 5.    Defendants Caused the Submission of False or Fraudulent Claims to Federal And State Health Insurance Programs

122.    As described above, Defendants, between at least January 2011 to the present, knowingly violated the federal Anti-Kickback Statute and similar state anti-kickback laws.

123.    When Defendants intentionally decided to employ these illegal kickbacks to promote the Philips CPAP/VPAP equipment and supplies, it knew or should have known that HME companies would routinely and necessarily file false and fraudulent claims with the federal government and state governments when they sought federal and state reimbursement for Philips' CPAP equipment and supplies.

124.    Medicaid and Medicare claims for the payment of Philips' CPAP products induced by illegal kickbacks are submitted to the United States and/or the States by the HME companies who fill the patients' prescriptions.  Because such claims are not eligible for federal or state reimbursement, submission of such a claim for reimbursement constitutes a false or fraudulent claim under the federal False Claims Act, 31 U.S.C. § 3729, and the States' analogous false claims statutes. And, those who knowingly cause such false or fraudulent claims to be filed, as the Defendants have through their illegal kickback practices, are liable under the federal False Claims Act, 31 U.S.C. § 3729, and the States' analogous false claims statutes.

125.    Defendants knew that claims resulting from kickbacks were not eligible for federal and state health care program reimbursement. Notwithstanding its knowledge that claims for

Philips' CPAP/VPAP equipment and supplies induced by kickbacks were not eligible for federal and state reimbursement, Philips knowingly undertook such illegal kickback practices to increase the HME companies' provision of Philips' CPAP/VPAP products to their patients.

126.    Philips's illegal kickbacks caused the submission of false or fraudulent claims to federal and state health insurance plans.

127.    Philips substantially benefitted from all of the false and fraudulent claims described herein.

128.    Each claim for reimbursement for Philips CPAP/VPAP equipment and supplies resulting from Defendants illegal inducements, that were submitted to a federal health insurance program represents a false or fraudulent claim for payment, in violation of the Federal False Claims Act and analogous State False Claims statutes.

129.    Claims that arise from Defendants' kickback scheme are false, and violate the False Claims Act, because they are the result of a kickback - no further express or implied false statement is required to render such infected or tainted claims false, and none can render the claim legitimate.

130.    Although no express or implied false statement is required, claims infected or tainted by Defendants' illegal kickbacks do contain false statements of compliance with the Anti-Kickback statute.  In particular, a party that submits a claim for payment to Medicare or Medicaid impliedly certifies compliance with all conditions of payment, i.e., that it is properly payable.  As discussed above, a condition of payment of any claim submitted to Medicare or Medicaid is that the claim did not result from a financial transaction that violated the Anti-Kickback Statute.  Consequently, Defendants' kickbacks to induce HME companies to recommend and put their patients on Philips CPAP/VPAP equipment and supplies, renders false the submitter's implied or

COLUMBIA 1158319v1

express certification of compliance that resulting claim complies with the requirements of the Anti-Kickback Statute.

131.    The submission of false claims was not only foreseeable, but an intended result of Defendants' illegal kickbacks.

## Count I

### Federal False Claims Act
### 31 U. S. C. §§ 3729(a)(l) and (a)(2)

132.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 131 of this Complaint.

133.    This is a claim for treble damages and penalties under the False Claims Act, 31 U. S. C. § 3729, et seq., as amended.

134.    By virtue of the acts described above, Defendants knowingly caused to be presented, false or fraudulent claims to the United States Government for payment or approval.

135.    By virtue of the acts described above, Defendants knowingly caused to be made or used false records and statements, and omitted material facts, to induce the Government to approve or pay such false and fraudulent claims.

136.    Defendants provided illegal remuneration to HME companies participating in The Program to induce improper recommendations and provision of Philips CPAP/VPAP equipment and supplies to beneficiaries of federally-funded health care programs in violation of the federal Anti-Kickback Statute.

137.    Claims that arise from Defendants' kickback scheme are false, and violate the False Claims Act, because they are the result of a kickback - no further express or implied false statement is required to render such infected claims false, and none can render the claim legitimate.

138.    Defendants' violations of the federal Anti-kickback Statute give rise to liability under the federal False Claims Act.

139.    Defendant violated the federal False Claims Act by submitting, or causing to be submitted, claims for reimbursement from federal health care programs, including Medicare and Medicaid, knowing that those claims were ineligible for the payments demanded due to federal Anti-Kickback Statute violations associated with illegal remuneration paid to HME companies.

140.    Each provision of Philips CPAP/VPAP equipment and supplies that occurred as a result of the Defendants' illegal inducements represents a false or fraudulent record or statement.

141.    Each claim for reimbursement for Philips CPAP/VPAP equipment and supplies submitted to a federal health insurance program resulting from illegal inducements represents a false or fraudulent claim for payment.

142.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented by thousands of separate entities, across the United States, and over many years.  Relators have no control over, or dealings with, such entities and have no access to the records in their possession.

143.    The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendants, paid and continues to pay the claims that are non-payable as a result of Defendants' illegal kickbacks, and therefore false under this federal FCA.

144.    By reason of the Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.  Federal health insurance programs have paid many thousands of claims, amounting to many hundreds of millions of dollars, for the provision of Philips CPAP/VPAP equipment and supplies that were illegally induced by Defendants.

COLUMBIA 1158319v1

145.    All of the Defendants' conduct described in this Complaint was knowing, as that term is used in the federal False Claims Act.

## Count II

### California False Claims Act
### Cal Govt Code§ 12651(a)(l) and (2)

146.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 145 of this Qui Tam Complaint.

147.    This is a claim for treble damages and penalties under the California False Claims Act.

148.    By virtue of the acts described above, the Defendants have violated and continue to violate California laws prohibiting the payment or receipt of bribes or kickbacks, namely Cal Bus. & Prof. Code § 650, Cal. Welfare & inst. Code § 14107.2, and Cal. Health & Safety Code§ 445.

149.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

150.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the California State Government to approve or pay such false and fraudulent claims.

151.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

152.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

153.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

154.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

155.    By reason of the Defendants' acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

156.    The State of California is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count III

### Delaware False Claims and Reporting Act
### 6 Del C. § 1201(a)(l) and (2)

157.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 156 of this Qui Tam Complaint.

158.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

159.    154.    By virtue of the acts described above, the Defendants have violated and continue to violate Delaware law prohibiting the payment or receipt of bribes or kickbacks, namely Del. Code Ann. tit. 31 §§ 1005, 1007, and 1008.

COLUMBIA 1158319v1

160.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Delaware State Government for payment or approval.

161.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts, to induce the Delaware State Government to approve or pay such false and fraudulent claims.

162.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

163.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

164.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

165.    The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continued to pay the claims that are non-payable as a result of Defendants' illegal inducements.

166.    By reason of the Defendants' acts, the State of Delaware has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

167.    The State of Delaware is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

COLUMBIA 1158319v1

## Count IV

### Florida False Claims Act
### Fla. Stat. Ann. § 68.082(2)

168.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 167 of this Qui Tam Complaint.

169.    This is a claim for treble damages and penalties under the Florida False Claims Act, Fla. Stat. § 68.082(2)

170.    By virtue of the acts described above, Defendants have violated and continue to violate Florida law prohibiting the payment or receipt of bribes or kickbacks., namely Fla. Stat. §456.054 and Fla. Stat. § 409.920.

171.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Florida State Government for payment or approval.

172.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the Florida State Government to approve or pay such false and fraudulent claims.

173.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

174.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

COLUMBIA 1158319v1

175.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

176.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continues to pay the claims that are non-payable as a result of Defendants' illegal inducements.

177.    By reason of the Defendants' acts, the State of Florida has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

178.    The State of Florida is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count V

**Illinois Whistleblower Reward and Protection Act**
**740 Ill. Comp. Stat. § 175/3(a)(l) and (2)**

179.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 178 of this Qui Tam Complaint.

180.    This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

181.    By virtue of the acts described above, Defendants have violated and continue to violate the 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks).

182.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Illinois State Government for payment or approval.

COLUMBIA 1158319v1

183.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the Illinois State Government to approve or pay such false and fraudulent claims.

184.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

185.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

186.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

187.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continues to pay the claims that are non-payable as a result of Defendants' illegal inducements.

188.    By reason of the Defendants' acts, the State of Illinois has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

189.    The State of Illinois is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count VI

### Indiana False Claims and Whistleblower Protection Act
### IC 5-11-5.5-2(b)(l), (2), and (8)

190.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 189 of this Qui Tam Complaint.

191.    By virtue of the acts described above, Defendants have violated and continue to violate Indiana law prohibiting the payment or receipt of bribes or kickbacks, namely Ind. Code §12-15-24-2.

192.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act.

193.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Indiana State Government for payment or approval.

194.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the Indiana State Government to approve or pay such false and fraudulent claims.

195.    By virtue of the acts described above, Defendants knowingly caused or induced another person to perform an act described in IC 5-l l-5.5-2(b)(l) and/or (2).

196.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

197.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

198.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

199.    The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by defendant, paid and continues to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

200.    By reason of the Defendants' acts, the State of Indiana has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

201.    The State of Indiana is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**Count VII**

**Michigan Medicaid False Claim Act**
**M.C.L. §400.603, 400.606, and 400.607**

202.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 201 of this Qui Tam Complaint.

203.    By virtue of the acts described above, the Defendants have violated and continue to violate Michigan law prohibiting the payment or receipt of bribes or kickbacks, namely Mich. Comp. Laws §752.1004.

204.    This is a claim for treble damages and penalties under the Michigan Medicaid False Claim Act.

205.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Michigan State Government for payment or approval.

206.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the Michigan State Government to approve or pay such false and fraudulent claims.

207.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

208.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

209.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

210.    The Michigan State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal inducements.

211.    By reason of the Defendants' acts, the State of Michigan has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

212.    The State of Michigan is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count VIII

### New Mexico Medicaid False Claims Act
### N.M. Stat. Ann.§ 27-14-4A and C.

213.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 212 of this Qui Tam Complaint.

214.    This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act.

215.    By virtue of the acts described above, the Defendants have violated and continue to violate New Mexico law prohibiting the payment or receipt of bribes or kickbacks, namely N.M. Stat. Ann. §30-44-7.

216.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Mexico State Government for payment or approval.

217.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the New Mexico State Government to approve or pay such false and fraudulent claims.

218.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

219.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

220.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

COLUMBIA 1158319v1

221.    The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by defendant, paid and continues to pay the claims that are non-payable as a result of Defendants' illegal inducements.

222.    By reason of the Defendants' acts, the State of New Mexico has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

223.    The State of New Mexico is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count IX

### New York False Claims Act
### N.Y. State Fin. Law§ 189.l(a) and (b)

224.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 223 of this Qui Tam Complaint.

225.    This is a claim for treble damages and penalties under the New York False Claims Act.

226.    By virtue of the acts described above, the Defendants have violated and continue to violate New York law prohibiting the payment or receipt of bribes or kickbacks, namely N.Y. Soc. Serv. Law §366-d.

227.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New York State Government for payment or approval.

228.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the New York State Government to approve or pay such false and fraudulent claims.

COLUMBIA 1158319v1

229.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

230.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

231.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

232.    The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continues to pay the claims that are non-payable as a result of Defendants' illegal inducements.

233.    By reason of the Defendants' acts, the State of New York has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

234.    The State of New York is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count X

### Virginia Fraud Against Taxpayers Act
### Va. Code Ann.§ 8.0l-216.3A.1and2

235.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 234 of this Qui Tam Complaint.

236.    This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

COLUMBIA 1158319v1

237.    By virtue of the acts described above, the Defendants have violated and continue to violate Virginia law prohibiting the payment or receipt of bribes or kickbacks, namely Va. Code Ann. § 26-20-4 and§ 26-20-9.

238.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Commonwealth of Virginia for payment or approval.

239.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the Commonwealth of Virginia to approve or pay such false and fraudulent claims.

240.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

241.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

242.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

243.    The Commonwealth of Virginia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal inducements.

244.    By reason of the Defendants' acts, the Commonwealth of Virginia has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

245.    The Commonwealth of Virginia is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**Count XI**

**District of Columbia Procurement Reform Amendment Act**
**D.C. Code Ann.§ 2-308.14 (a)(l) and (2)**

246.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 244 of this Qui Tam Complaint.

247.    This is a claim for treble damages and penalties under the District of Columbia Procurement Reform Amendment Act.

248.    By virtue of the acts described above, the Defendants have violated and continue to violate the law of the District of Columbia prohibiting the payment or receipt of bribes or kickbacks, namely D.C. Code Ann. § 4-802.

249.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia Government for payment or approval.

250.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or used false records and statements, and omitted material facts to induce the District of Columbia Government to approve or pay such false and fraudulent claims.

251.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

252.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

253.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

254.    The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal inducements.

255.    By reason of the Defendants' acts, the District of Columbia has been damaged, and continued to be damaged, in a substantial amount to be determined at trial.

256.    The District of Columbia is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count XII

### Colorado Medicaid False Claims Act
### C.R.S.A. § 25.5-4-303.5 et seq.

257.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 256 of this Qui Tam Complaint.

258.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

259.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

260.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Colorado State Government to approve or pay such false and fraudulent claims.

261.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

262.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

263.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

264.    The Coloroado State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

265.    By reason of the Defendants' acts, the State of Colorado has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

266.    The State of Colorado is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count XIII

### Connecticut  False Claims Act
### Conn. Gen. Stat. Ann. § 17b-301 et seq.

267.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 266 of this Qui Tam Complaint.

268.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

269.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut State Government for payment or approval.

270.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Connecticut State Government to approve or pay such false and fraudulent claims.

271.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

272.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

273.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

274.    The Connecticut State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

COLUMBIA 1158319v1

275.    By reason of the Defendants' acts, the State of Connecticut has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

276.    The State of Connecticut is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count  XIV

### Georgia Taxpayer Protection  False Claims Act
### Ga. Code Ann. § 23-3-120 et seq.

277.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 276 of this Qui Tam Complaint.

278.    This is a claim for treble damages and penalties under the Georgia Taxpayer Protection False Claims Act.

279.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Georgia State Government for payment or approval.

280.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Georgia State Government to approve or pay such false and fraudulent claims.

281.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

282.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

COLUMBIA 1158319v1

283.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

284.    The Georgia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

285.    By reason of the Defendants' acts, the State of Georgia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

286.    The State of Georgia is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XV

### Hawaii  False Claims Act
### HRS § 661-21 et seq.

287.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 286 of this Qui Tam Complaint.

288.    This is a claim for treble damages and penalties under the Hawaii False Claims Act.

289.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Hawaii State Government for payment or approval.

290.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Hawaii State Government to approve or pay such false and fraudulent claims.

COLUMBIA 1158319v1

291.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

292.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

293.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

294.    The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

295.    By reason of the Defendants' acts, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

296.    The State of Hawaii is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count  XVI

### Iowa  False Claims Act
### I.C.A. § 685.3 et seq.

297.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 296 of this Qui Tam Complaint.

298.    This is a claim for treble damages and penalties under the Iowa False Claims Act.

299.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Iowa State Government for payment or approval.

300.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Iowa State Government to approve or pay such false and fraudulent claims.

301.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

302.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

303.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

304.    The Iowa State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

305.    By reason of the Defendants' acts, the State of Iowa has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

306.    The State of Iowa is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XVII

### Louisiana Medical Assistance Programs Integrity Law

53

**La. Rev. Stat. § 46:439.1 et seq.**

307.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 306 of this Qui Tam Complaint.

308.    This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

309.    By virtue of the acts described above, the Defendants have violated and continue to violate Louisiana laws prohibiting the payment or receipt of bribes or kickbacks, namely LSA-R.S. § 46:438.1 et seq.

310.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Louisiana State Government for payment or approval.

311.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Louisiana State Government to approve or pay such false and fraudulent claims.

312.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

313.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

314.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

COLUMBIA 1158319v1

315.    The Louisiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

316.    By reason of the Defendants' acts, the State of Louisiana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

317.    The State of Louisiana is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XVIII

### Maryland  False Health Claims Act
### MD Code § 2-601 et seq.

318.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 317 of this Qui Tam Complaint.

319.    This is a claim for treble damages and penalties under the Maryland False Health Claims Act.

320.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Maryland State Government for payment or approval.

321.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Maryland State Government to approve or pay such false and fraudulent claims.

322.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

323.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

324.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

325.    The Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

326.    By reason of the Defendants' acts, the State of Maryland has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

327.    The State of Maryland is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count  XIX

**Massachusetts  False Claims Act**
**Mass. Gen. Laws ch. 12 § 5A et seq.**

328.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 327 of this Qui Tam Complaint.

329.    This is a claim for treble damages and penalties under the Massachusetts False Claims Act.

330.    By virtue of the acts described above, the Defendants have violated and continue to violate Massachusetts laws prohibiting the payment or receipt of bribes or kickbacks, namely Mass. Gen. Laws Ann. Ch. 118E § 41.

331.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Massachusetts State Government for payment or approval.

332.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Massachusetts State Government to approve or pay such false and fraudulent claims.

333.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

334.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

335.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

336.    The Massachusetts State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

337.    By reason of the Defendants' acts, the State of Massachusetts has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

COLUMBIA 1158319v1

338.   The State of Massachusetts is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**Count  XX**

**Minnesota  False Claims Act
Minn. Stat. Ann. § 15C.01 et seq.**

339.   Relator realleges and incorporates by reference the allegations contained in paragraphs l through 338 of this Qui Tam Complaint.

340.   This is a claim for treble damages and penalties under the Minnesota False Claims Act.

341.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Minnesota State Government for payment or approval.

342.   By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Minnesota State Government to approve or pay such false and fraudulent claims.

343.   From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

344.   Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

345.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

346.    The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

347.    By reason of the Defendants' acts, the State of Minnesota has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

348.    The State of Minnesota is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXI

### Montana  False Claims Act
### Mont. Code Ann. § 17-8-401 et seq.

349.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 348 of this Qui Tam Complaint.

350.    This is a claim for treble damages and penalties under the Montana False Claims Act.

351.    By virtue of the acts described above, the Defendants have violated and continue to violate Montana laws prohibiting the payment or receipt of bribes or kickbacks, namely Mont. Code Ann. § 45-6-313 et seq.

352.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Montana State Government for payment or approval.

COLUMBIA 1158319v1

353.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Montana State Government to approve or pay such false and fraudulent claims.

354.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

355.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

356.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

357.    The Montana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

358.    By reason of the Defendants' acts, the State of Montana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

359.    The State of Montana is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXII

### Nevada  False Claims Act
### Nev. Rev. Stat. Ann. § 357.010 et seq.

COLUMBIA 1158319v1

360.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 359 of this Qui Tam Complaint.

361.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

362.    By virtue of the acts described above, the Defendants have violated and continue to violate Nevada laws prohibiting the payment or receipt of bribes or kickbacks, namely Nev. Rev. Stat. Ann. § 422.560 et seq.

363.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Nevada State Government for payment or approval.

364.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Nevada State Government to approve or pay such false and fraudulent claims.

365.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

366.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

367.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

COLUMBIA 1158319v1

368.    The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

369.    By reason of the Defendants' acts, the State of Nevada has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

370.    The State of Nevada is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXIII

### New Hampshire  False Claims Act
### N.H. Rev. Stat. Ann. § 167:61-a et seq.

371.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 370 of this Qui Tam Complaint.

372.    This is a claim for treble damages and penalties under the New Hampshire False Claims Act.

373.    By virtue of the acts described above, the Defendants have violated and continue to violate New Hampshire laws prohibiting the payment or receipt of bribes or kickbacks, namely N.H. Rev. Stat. Ann. § 167:61-a et seq.

374.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Hampshire State Government for payment or approval.

375.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the New Hampshire State Government to approve or pay such false and fraudulent claims.

COLUMBIA 1158319v1

376.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

377.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

378.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

379.    The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

380.    By reason of the Defendants' acts, the State of New Hampshire has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

381.    The State of New Hampshire is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXIV

### New Jersey  False Claims Act
### N.J. Stat. Ann. § 2A:32C-1 et seq.

382.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 381 of this Qui Tam Complaint.

383. This is a claim for treble damages and penalties under the New Jersey False Claims Act.

384. By virtue of the acts described above, the Defendants have violated and continue to violate New Jersey laws prohibiting the payment or receipt of bribes or kickbacks, namely N.J. Stat. Ann. § 30:4D-17 et seq.

385. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the New Jersey State Government for payment or approval.

386. By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the New Jersey State Government to approve or pay such false and fraudulent claims.

387. From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

388. Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

389. Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

390. The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

391.    By reason of the Defendants' acts, the State of New Jersey has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

392.    The State of New Jersey is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**Count  XXV**

**North Carolina  False Claims Act**
**N.C.G.S.A. § 1-605 et seq.**

393.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 392 of this Qui Tam Complaint.

394.    This is a claim for treble damages and penalties under the North Carolina False Claims Act.

395.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the North Carolina State Government for payment or approval.

396.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the North Carolina State Government to approve or pay such false and fraudulent claims.

397.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

398.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

399.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

400.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

401.    By reason of the Defendants' acts, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

402.    The State of North Carolina is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXVI

### Oklahoma Medicaid  False Claims Act
### Okla. Stat. Ann. 63 § 5053.1 et seq.

403.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 402 of this Qui Tam Complaint.

404.    This is a claim for treble damages and penalties under the Oklahoma False Claims Act.

405.    By virtue of the acts described above, the Defendants have violated and continue to violate Oklahoma laws prohibiting the payment or receipt of bribes or kickbacks, namely Okla. Stat. Ann. Tit. 56 § 1005 et seq..

406.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Oklahoma State Government for payment or approval.

407.     By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Oklahoma State Government to approve or pay such false and fraudulent claims.

408.     From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

409.     Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

410.     Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

411.     The Oklahoma State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

412.     By reason of the Defendants' acts, the State of Oklahoma has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

413.     The State of Oklahoma is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count XXVII

### Rhode Island State False Claims Act
### R.I. Gen. Laws § 9-1.1-1 et seq.

414.     Relator realleges and incorporates by reference the allegations contained in paragraphs l through 413 of this Qui Tam Complaint.

415.     This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

416.     By virtue of the acts described above, the Defendants have violated and continue to violate Rhode Island laws prohibiting the payment or receipt of bribes or kickbacks, namely R.I. Gen. Laws § 5-48.1-3 et seq.

417.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Rhode Island State Government for payment or approval.

418.     By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Rhode Island State Government to approve or pay such false and fraudulent claims.

419.     From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

420.     Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

COLUMBIA 1158319v1

421.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

422.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

423.    By reason of the Defendants' acts, the State of Rhode Island has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

424.    The State of Rhode Island is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count  XXVIII

### Tennessee  False Claims Act
### T.C.A. § 71-5-182(a)  et seq.

425.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 424 of this Qui Tam Complaint.

426.    This is a claim for treble damages and penalties under the Tennessee False Claims Act.

427.    By virtue of the acts described above, the Defendants have violated and continue to violate Tennessee laws prohibiting the payment or receipt of bribes or kickbacks, namely 71-5-182(a).

COLUMBIA 1158319v1

428.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Tennessee State Government for payment or approval.

429.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Tennessee State Government to approve or pay such false and fraudulent claims.

430.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

431.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

432.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

433.    The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

434.    By reason of the Defendants' acts, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

435.    The State of Tennessee is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count XXIX

### Texas Medicaid Fraud Prevention Law
### Tex. Hum. Res. Code Ann. § 36.001 et seq.

436.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 435 of this Qui Tam Complaint.

437.    This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Law.

438.    By virtue of the acts described above, the Defendants have violated and continue to violate Texas laws prohibiting the payment or receipt of bribes or kickbacks, namely Tex. Hum. Res. Code Ann. § 32.039 et seq.

439.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Texas State Government for payment or approval.

440.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Texas State Government to approve or pay such false and fraudulent claims.

441.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

442.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

443.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

COLUMBIA 1158319v1

444.    The Texas State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

445.    By reason of the Defendants' acts, the State of Texas has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

446.    The State of Texas is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

## Count XXX

### Washington Medicaid Fraud False Claims Act
### RCWA 74.66.005 et seq.

447.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 446 of this Qui Tam Complaint.

448.    This is a claim for treble damages and penalties under the Washington Medicaid Fraud False Claims Act.

449.    By virtue of the acts described above, the Defendants have violated and continue to violate Washington laws prohibiting the payment or receipt of bribes or kickbacks, namely RCWA 74.09.240.

450.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Washington State Government for payment or approval.

451.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Washington State Government to approve or pay such false and fraudulent claims.

COLUMBIA 1158319v1

452.    From at least January 2011 to present, Defendants offered kickbacks to HME companies as described above, to induce HME companies to recommend and provide their patients with Philips CPAP/VPAP equipment and supplies.

453.    Defendants knowingly caused to be presented and/or caused to be made or used false certifications to the Medicaid program that the HME companies were in compliance with state and federal laws, including the Anti-Kickback Statute.

454.    Defendants knowingly caused to be presented and/or caused to be made or used claims for Philips CPAP/VPAP equipment and supplies resulting from kickbacks, thereby causing the Medicaid program to reimburse ineligible claims.

455.    The Washington State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

456.    By reason of the Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

457.    The State of Washington is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### Count XXXI

### Wisconsin False Claims For Medical Assistance Law
### Wis. Stat. § 20.931 et seq.

458.    Relator realleges and incorporates by reference the allegations contained in paragraphs l through 457 of this Qui Tam Complaint.

COLUMBIA 1158319v1

459.    This is a claim for treble damages and penalties under the Wisconsin False Claims For Medical Assistance Law.

460.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Wisconsin State Government for payment or approval.

461.    By virtue of the acts described above, Defendants knowingly made, used or caused to be made or uses false records and statements, and omitted material facts, to induce the Wisconsin State Government to approve or pay such false and fraudulent claims.

462.    The Wisconsin State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continue to pay the claims that are non-payable as a result of the Defendants' illegal inducements.

463.    By reason of the Defendants' acts, the State of Wisconsin has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

464.    The State of Wisconsin is entitled to treble damages, and the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

Prayer

WHEREFORE, qui tam Plaintiff prays for judgment against the Defendants as follows:

1.    That Defendants ceases and desists from violating 31 U. S. C. § 3729 et seq., and the equivalent provisions of the States and the District of Columbia's statutes as set forth above;

2.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $12,000 for each violation of 31 U.S.C. §3729;

3.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of California has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Cal. Govt Code § 1265(a);

4.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Colorado has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of C.R.S.A. § 25.5-4-303.5;

5.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Connecticut has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Con. Gen. Stat. Ann., § 17b-301;

6.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendants' actions, plus a civil penalty of $ 11,000 for each violation of 6 Del. C. § 1201(a);

7.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Fla. Stat. Ann. § 68.082(2);

8.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Georgia has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Ga. Code Ann. § 23-3-120;

9.      That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of HRS § 661-21;

10.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of 740 Ill. Comp. Stat. § 175/3(a);

11.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendants' actions, plus a civil penalty of at least $5,000 for each violation of IC § 5-11-5.5-2(b);

12.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Iowa has sustained because of Defendants' actions, plus a civil penalty of the maximum amount allowed by the federal act for each violation of I.C.A. § 685.3;

13.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Louisiana has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of La. Rev. Stat. Ann.§§ 46:439.1-4 and 46:440.1-4;

14.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the Commonwealth of Massachusetts has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Mass. Gen. L. Ch. 12 § SB;

15.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Michigan has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of M.C.L. §§ 400.603, 400.606, and 400.607;

16.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Montana has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Mont. Code Ann.§ 17-8-403(1) and (2);

COLUMBIA 1158319v1

17.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Kev. Rev. Stat. Ann.§ 357.040(1)(a), (b);

18.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Hampshire has sustained because of Defendants' actions, plus civil penalties of $10,000 for each violation of N.H. Rev. Stat. Ann. §167:61-b.l(a) and (b);

19.     That this Court enter judgment against Defendants in an amount equal to three times be amount of damages the State of New Jersey has sustained because of Defendants' actions, plus civil penalties of $11,000 for each violation of N.J. Stat. Ann. § 2A:32C-3(a) and (b);

20.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendants' actions, plus civil penalties of $10,000 for each violation of N.M. Stat. Ann.§ 27-14-4A and C [N.M. Stat. Ann.§ 27-2F-4];

21.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Maryland has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of MD Code 2-604;

22.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Minnesota has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of Minn. Stat. Ann. § 15C.01;

23.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New York has sustained because of Defendants' actions, plus civil penalties of $12,000 for each violation of N. Y. State Fin. § 189.1;

24.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of North Carolina has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of N.C.G.S.A. § 1-605;

25.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Oklahoma has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of Okla. Stat. tit. 63 §5053.11 et seq.;

26.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of R.I. Gen. Laws § 9-l.l-3(a)(l) and (2);

27.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of T.C.A. § 4-18-101;

28.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Texas has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of Tex. Hum. Res. Code Ann.§ 36.002(1), (2), (4) Band (7);

29.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the Commonwealth of Virginia has sustained because of Defendant's' actions, plus a civil penalty of $11,000 for each violation of Va. Code Ann. §8.0l-216.3A.l and 2;

30.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Washington has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of RCWA 74.66.005;

COLUMBIA 1158319v1

31.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of Wisconsin has sustained because of Defendants' actions, plus a civil penalty of $10,000 for each violation of 121 Wis. Stat.§ 20.931;

32.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of D. C. Code Ann. § 2-308.14(a)(1)and (2);

33.     That qui tam Plaintiff be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act, and the equivalent provisions of the States and District of Columbia statutes set forth above;

34.     That qui tam Plaintiff be awarded all costs and expenses of this action, including attorneys' fees; and

35.     That all Plaintiffs recover such other relief as the Court deems just and proper.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, qui tam Plaintiff hereby demands a trial by jury.

Respectfully submitted,

 s/Andrew G. Melling
Andrew G. Melling, Fed. ID #7882
Celeste T. Jones, Fed. ID #2225
A. Victor Rawl, Jr., Fed. ID #6971
1221 Main Street, P.O. Box 11390
Columbia, South Carolina 29211
(803) 799-9800
Facsimile (803) 753-3278
amelling@mcnair.net

*Attorneys for the Qui Tam Plaintiff*

This 28th day of May, 2014

Columbia, South Carolina

COLUMBIA 1158319v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA; the States )
of California, Colorado, Connecticut, )
Delaware, Florida, Georgia, Hawaii, Illinois, )
Indiana, Iowa, Louisiana, Maryland, the )
Commonwealth of Massachusetts, Michigan, )
Minnesota, Montana, Nevada, New )
Hampshire, New Jersey, New Mexico, New )
York, North Carolina, Oklahoma, Rhode )          Civil Action No.: 14-99-9999
Island, Tennessee, Texas, the Commonwealth )
of Virginia, Washington, Wisconsin, and the )          CERTIFICATE OF SERVICE
District of Columbia, )
                                              )
Ex rel. DR. JOHN DOE, )
                                              )
                        Plaintiffs, )
                                              )
Vs. )
                                              )
PHILIPS ELECTRONICS NORTH )
AMERICA, PHILIPS HEALTHCARE, )
PHILIPS RESPIRONICS, AND MEDSAGE )
TECHNOLOGIES, )
                                              )
                        Defendants. )
_____ )

        I, Lindsay H. Valek, Litigation Support Specialist for the law offices of McNair Law Firm,

P.A. do hereby certify that I have caused the foregoing QUI TAM COMPLAINT FILED IN

CAMERA AND UNDER SEAL to be served upon the following persons via United States

Certified Mail, Return Receipt Requested at the following addresses

Eric H. Holder, Jr.
United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-00001

William N. Nettles
United States Attorney for the District of South Carolina
1441 Main Street, Suite 500
Columbia, South Carolina 29201

Lindsay H. Xalek

This 28th Day of May, 2014
Columbia, South Carolina